UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **TELEBRANDS CORP.,** | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-3374 (JLL) |
| | : | |
| v. | : | |
| | : | |
| **MARTFIVE, LLC** and | : | OPINION |
| **CHARLES M. HENGEL,** | : | |
| | : | |
| Defendants. | : | |

## I. INTRODUCTION

This matter comes before the Court on the motion of defendants martFIVE, LLC ("martFIVE") and Charles M. Hengel ("Hengel") to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), to transfer the proceedings to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a), or stay the proceedings pending the outcome of a case filed in the United States District Court for the District of Minnesota.

For the reasons herein, Defendants' motion to transfer is granted. Because transferring this action renders Defendants' other requests moot, the Court need not reach Defendants' motions to dismiss or to stay the litigation.

## II. Background

### A. Factual Background

Plaintiff Telebrands Corp. ("Telebrands") is a direct marketing company that markets and sells a range of consumer products through direct response advertising, catalogue sales, mail

orders, internet sales, and national retail stores.  Compl., ECF No. 1 ¶ 15.  Telebrands is currently test-marketing two products through direct response advertising that are relevant to this dispute: (1) a plush toy marketed under the trademark "POCKET PALS"; and (2) a collapsible cane marketed under the trademark "TRUSTY CANE."  Id. ¶¶ 17-18.

Defendant martFIVE is a Minnesota-based limited liability company.  Id. ¶ 4.  Defendant Hengel, a Minnesota resident, is the CEO and 100% owner of martFIVE.  Id. ¶ 5; Affidavit of Charles M. Hengel ("Hengel Aff."), ECF No. 13-7 ¶¶ 1,4.  This litigation relates to two products developed, manufactured, and sold by Defendants: (1) a plush toy sold under the trademark"Stuffies®"; and (2) a collapsible cane sold under the trademark "HURRYCANE®".  Compl., ECF No. 1 ¶¶ 22, 23.  Stuffies®'s design is patented at U.S. Design Patent No. D681,744 and two trademarks relating to that product are registered at U.S. Trademark Registration Nos. 4,286,271 and 4,286,272.  Id. ¶¶ 19-25.  Three trademarks relating to the HURRYCANE® are registered at U.S. Trademark Registration Nos. 4,243,464, 4,286,043, and 4,191,792.  Id. ¶¶ 26-28.  These products may also be subject to copyright and/or trade dress protections.  Id. ¶¶ 29-31.

In March or April of this year, Defendants became aware of Plaintiff's production of TRUSTY CANE and POCKET PALS.  See Declaration of Charles M. Hengel in Opposition to Defendant Telebrands Corp.'s Motion to Dismiss or Transfer ("Hengel Minn. Decl."),[1] attached as Ex. 9 to the Declaration of Robert T. Maldonado in Opposition to Defendants' Motion to Dismiss, Stay or Transfer ("Maldonado Decl."), ECF No. 21-1 ¶ 3.

---

[1] This document is a declaration that Hengel submitted in a separate litigation between the parties in the United States District Court for the District of Minnesota.

On May 16, 2013, Hengel sent an e-mail, through LinkedIn, to Lynn Hamlin, Telebrand's Vice President of Infomercials. See May 16, 2013 e-mail, attached as Ex. 1 to the Declaration of Lynn Hamlin in Support of Plaintiff Telebrands Corp.'s Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Transfer, or Stay ("Hamlin Decl."), ECF No. 21-3. In this correspondence, Hengel claims Telebrands is "in violation of a number IP elements of both HurryCane and Stuffies." Id.

Hengel also directed martFIVE's legal counsel, Russell M. Spence, Jr., Esq., to draft and send a cease and desist letter to Telebrands. Hengel Minn. Decl., attached as Ex. 9 to Maldonado Decl., ECF No. 21-1 ¶ 5. On May 20, 2013, Spence sent a cease and desist letter to the attention of Khubani and Plaintiff's legal department, claiming TRUSTY CANE and POCKET PALS infringed martFIVE's protected intellectual property and demanding Plaintiff cease and desist from its production and sale of these goods. See Letter from Spence to Telebrands, attached as Ex. G to Compl., ECF No. 1-7 at 2-3. The letter continued: "Unless we receive your written reply and confirmation that you will abide by these reasonable requests by May 29, 2013, we will presume that you do not intend to voluntarily take the necessary actions outlined above. We will then have no alternative but to commence immediate legal action against your company[.]" Id.

On May 24, 2013, Hengel and Khubani were participants to a telephone call in which these allegations were discussed. See Hengel Aff., ECF No. 13-7 ¶ 7.

On May 29, 2013, Plaintiff, through its counsel, Robert T. Maldonado, Esq., sent an e-mail to Defendants' counsel, stating Plaintiff required "additional information" before it could "respond substantively" to Defendants' infringement claims. See Letter from Maldonado to Spence, attached as Ex. 2 to Maldonado Decl., ECF No. 21-1. Specifically, Plaintiff requested:

3

(1) that the Defendants identify which of its products infringed upon Defendants' patent or trademarks; and (2) additional details about the copyrights and trade dress referenced in the May 20, 2013 letter.  Id.

### B.      Procedural History

On May, 29, 2013, the same day that Plaintiff's counsel sent its e-mail response, Plaintiff filed this action.  See Compl., ECF No. 1.  The Complaint names both martFIVE and Hengel as defendants and seeks declaratory judgments of invalidity or non-infringement relating to martFIVE's patent, trademarks, copyrights, and trade dress.  Id.

On June 4, 2013, Defendant martFIVE filed a separate action against Plaintiff in the U.S. District Court for the District of Minnesota (the "Minnesota litigation").  See Affidavit of Russell M. Spence, Jr., Esq. ("Spence Aff."), ECF No. 13-2 ¶ 3.  On June 21, 2013, martFIVE moved in the Minnesota litigation for a temporary restraining order, expedited discovery, and a preliminary injunction.  Id.  Oral argument on this motion was heard on July 10, 2013 before the Hon. Patrick J. Schiltz.  See Transcript of Oral Argument, attached as Ex. 8 to Maldonado Decl., ECF No. 21-1.  On July 18, 2013, Judge Schiltz denied martFIVE's motion for a preliminary injunction.  See Order, attached as Ex. 1 to Maldonado Decl., ECF No. 21-1.

Defendants filed a motion to dismiss, transfer, or stay these proceedings on June 26, 2013 and submitted a brief in support of the motion.  See Specially-Appearing Defendants' Brief in Support of Motion to Dismiss, Transfer or Stay ("Defs. Br."), ECF No. 13-1.  Plaintiff filed a brief in opposition to the motion on July 23, 2013.  See Plaintiff Telebrands Corp.'s Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Transfer or Stay ("Pl. Opp'n Br."), ECF No. 22.  On July 29, 2013, Defendants filed their reply.  See Specially-

Appearing Defendants' Reply Brief in Support of Motion to Dismiss, Transfer, or Stay ("Def. Reply Br."), ECF No. 26.

The Honorable Jose L. Linares, United States District Judge, referred the motions to the Undersigned for a Report and Recommendation.

### III.    Discussion

Section 1404(a) of Title 28 of the United States Code permits a district court "[f]or the convenience of parties and witnesses, [and] in the interest of justice" to transfer an action to another district "where it might have been brought." Abrams v. Gen. Nutrition Cos., Inc., 2006 WL 2739642, at *8 (D.N.J. Sept. 26, 2006) (citing 28 U.S.C. § 1404(a)).[2] "An action might have been brought in another district if: (1) venue is proper in the [other] district, and (2) the [other] district can exercise [personal] jurisdiction over all the parties." Id. (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970)). Thus, "[t]he first step in a court's analysis of a transfer motion is to determine whether [personal jurisdiction and] venue would be proper in the transferee district." Marino v. Kent Line Int'l, 2002 WL 31618496, at *2 (E.D.Pa. Nov. 20, 2002) (citing Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D.Pa. 2001)). The movant bears the burden of demonstrating that transfer is warranted. Id.

If the first prong of the inquiry is satisfied, the Court must then weigh a series of private

---

[2]  The Court may transfer a case even when it lacks personal jurisdiction over defendants. See 28 U.S.C. §§ 1404, 1406(a), 1631; see also Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962) (observing that "nothing in [its] language indicates that the operation of [28 U.S.C. §1406(a)] was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants"); see also Verissimo v. Immigration and Naturalization Servs., 204 F. Supp. 2d 818, 820 (D.N.J. 2002) (recognizing that "a court may transfer a matter under 28 U.S.C. § 1406 to a court with personal jurisdiction over the defendant and where venue is appropriate").

5

and public factors to determine whether transfer is appropriate. See Marino, 2002 WL 31618496 at *2 (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)). Section 1404(a) provides three factors for consideration: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a). In Jumara, the Court of Appeals for the Third Circuit noted that "there is no definitive formula or list of the factors" that a court must examine, and it identified private and public interest factors to be considered to determine if a case would more conveniently proceed in another venue. See Jumara, 55 F.3d at 879. The "private interests" factors include: (1) plaintiff's choice of forum; (2) defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. See Wallace v. Mercantile Cnty. Bank, 2006 WL 3302490, at *3 (E.D.Pa. Nov. 9, 2006) (citing Jumara, 55 F.3d at 879). The "public interests" factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law. Id.; see also Jumara, 55 F.3d at 879-80. The party seeking transfer should support its motion with affidavits and other documentation establishing that the interests of justice and convenience of the parties would best be served by a transfer. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756-57 (3d Cir. 1973).

### A.   Propriety of Venue in Transferee District

The first step in a court's analysis of a motion to transfer is to determine whether venue would be proper in the proposed transferee district. A civil action may be brought in:

>(1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
>(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
>(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). In an action for infringement of intellectual property rights, venue may lie "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The Federal Circuit has often interpreted this provision as conferring nationwide jurisdiction as Section 1391 defines where a defendant resides for venue purposes as where he is subject to a court's personal jurisdiction. See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("[V]enue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced.").

The record clearly establishes that Defendants are subject to personal jurisdiction in the District of Minnesota; martFIVE is headquartered in Minnesota and Hengel is a resident of Minnesota. Compl., ECF No. 1 ¶¶ 4-5.[3] Therefore, venue is proper in the District of Minnesota.

---

[3] The parties do not appear to dispute the District of Minnesota's personal jurisdiction over Defendants or the propriety of venue in the District of Minnesota. See Pl. Opp'n Br., ECF No. 22 at 17-31 (only contesting the "balancing of the interests" factors). In fact, the parties have already appeared in a separate litigation in the District of Minnesota. See Defs. Reply Br., ECF No. 26 at 8 n.8.

### B.      Public & Private Interest Factors

The Court must next evaluate whether the transfer is in the interest of justice and "must consider both the private and public interests effected by the transfer." Jumara, 55 F.3d at 879.

#### 1.      Summary of Arguments

##### a.      Defendants' arguments

Defendants assert Plaintiff's preference should be given little weight because this action is the result of Plaintiff's anticipatory filing. See Defs. Br., ECF No. 13-1 at 17. Specifically, Defendants' May 20, 2013 cease and desist letter demanded a response by May 29, 2013. On that date, Plaintiff's counsel responded by requesting additional information from Defendants, but also filed the Complaint in this matter. See id. Defendants also assert: (1) the convenience of witnesses favors transfer as Defendants' employees are located in Minnesota; (2) the District of Minnesota does not pose a hardship to Plaintiff as Plaintiff sells hundreds of products across the United States; (3) the parallel Minnesota litigation has progressed further than this matter; (4) Defendants have asserted a cause of action under Minnesota state law in the Minnesota litigation, which would be better resolved in the District of Minnesota; and (5) Minnesota's established public policies are implicated. See id. at 18-20.

##### b.      Plaintiff's arguments

Plaintiff argues its filing of the Complaint in this district was not an anticipatory filing and, therefore, the first-filed rule applies. See Pl. Opp'n Br., ECF 22 at 19. Plaintiff selected this forum because Plaintiff is located in the district and, at the time of Plaintiff's filing, Defendants had not threatened to file suit on a certain date. See id. at 19-20. Plaintiff also argues that it properly initiated a declaratory judgment action because Plaintiff "has invested heavily in

8

bringing these products to market, and has 750,000 units of TRUSTY CANE product on order." See id.  Therefore, Plaintiff's forum selection should be given great deference. See id. at 21-22.

Plaintiff also asserts transfer is improper because:  (1) New Jersey is the location of the "operative facts"; (2) the convenience of the parties is a neutral factor as each party would be equally inconvenienced by litigating in the other party's home forum; (3) many party and non-party witnesses are located in New Jersey; (4) relevant documents exist in New Jersey; (5) the Minnesota litigation has progressed only slightly further than this action; (6) there is no benefit to the Minnesota District Court hearing the Minnesota state law claim as the analysis of that claim is the same analysis applied to a federal Latham Act claim; and (7) New Jersey has a greater interest in the dispute as the allegedly infringing acts occurred in New Jersey.  See id. at 22-31.

### c. Defendants' reply

Defendants respond to Plaintiff by arguing:  (1) the first-filed doctrine does not apply because this court lacks jurisdiction over Defendants; (2) legal action was imminent on the date Plaintiff filed its Complaint; (3) the first-filed rule has less relevance when the first-filed litigation is a declaratory judgment action; (4) the Court may exercise its discretion under the Declaratory Judgment Act and not hear this suit; (5) New Jersey has limited interest in this dispute as at least one of Plaintiff's advertisements was created in Connecticut and its products are manufactured outside the United States; (6) the location of Plaintiff's employees is irrelevant to the balance of conveniences analysis; (7) all of Defendants' products and advertisements were created, developed, and sold in Minnesota; and (8) because of the companies' relative sizes, Plaintiff would suffer less financial hardship by litigating in a different forum.  See Defs. Reply Br., ECF No. 26 at 7-11.

      **2.**      **Analysis**

          **a.**      **Application of the first-filed rule**

The first-filed rule provides that "[i]n all cases of federal concurrent jurisdiction, the court that first has possession of the subject must decide it." E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (citing Crossley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)). The first-filed rule empowers a court to enjoin subsequent proceedings involving the same issues and parties in another district court. E.E.O.C., 850 F.2d at 971. The first-filed rule is "not a mandate directing wooden application." Id. at 972. Rather, the rule is "grounded on equitable principles" and "a court must act 'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" Id. at 977 (citing Langnes v. Green, 282 U.S. 531, 541 (1931)). Nevertheless, "invocation of the rule will usually be the norm, not the exception," and "[c]ourts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." Id. at 979. Circumstances that justify departure from the first-filed rule include bad faith, forum shopping, "institut[ion of] suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum," and when proceedings in the second-field action are more advanced. Id. at 976 (citations omitted); Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 399 (E.D.Pa. 2005); One World Botanicals LTD v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 328–29 (D.N.J. 1997).

The Court finds the filing of the Complaint in this matter constitutes an anticipatory filing. Defendants stated the following in their May 20, 2013, cease and desist letter: "Unless we receive your written reply and confirmation that you will abide by these reasonable requests

by May 29, 2013, we will presume that you do not intend to voluntarily take the necessary actions outlined above.  We will then have no alternative but to commence immediate legal action against your company[.]" See May 29, 2013 letter, attached as Ex. G to Compl., ECF No. 1-7 at 2-3.  While a filing may not be anticipatory if "litigation was in the air" but no definite filing deadline has been set, see Chartis Prop. Cas. Co. v. Inganamort, 2012 WL 6626029, at *6 (D.N.J. Dec. 19, 2012), Defendants did set a deadline:  May 29, 2013.  The fact that Plaintiff's counsel sent a request for additional time to respond on May 29 demonstrates Plaintiff's implicit acknowledgment of the deadline.  See Auto. Serv. Ass'n of N.J., Inc. v. Rockland Exposition, Inc., 2008 WL 5244282, at *5 (D.N.J. Dec. 12, 2008) (first-filed rule did not apply when plaintiff requested more time to respond to a cease and desist letter but filed the complaint the next day).  Because the Complaint is an anticipatory filing, the first-filed rule does not apply in this case.

The Court's decision is also supported by the procedural history of this litigation, namely that the suit before this court is a declaratory judgment action and the Minnesota litigation seeks coercive relief.  "Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." Church & Dwight v. Mayer Labs., Inc., 2010 WL 3907038, at *7 (D.N.J. Sept. 28, 2010) (quoting AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004)); see also One World Botanicals., 987 F. Supp. at 330 (departing from the first-filed rule); National Union Fire Ins. Co. of Pittsburgh, Pa. v. Freeport-McMoRan, Inc. , 767 F. Supp. 568, 573 (D.Del. 1991) ("When a federal declaratory judgment action has been filed in apparent anticipation of the other pending proceeding, equitable considerations militate toward allowing the later filed action to proceed to judgment[.]") (internal quotation omitted).

In Honeywell Int'l Inc.  v. Int'l Union, United Auto., Aerospace & Agri. Implement Workers of Am., the Third Circuit upheld the district court's decision not to apply the first-filed rule under similar circumstances.  See 502 Fed. Appx. 201 (3d Cir. 2012).  In that case, negotiations between Honeywell and its workers' union had stalled due to the parties' disagreement over retirement cap provisions that were to be included in the parties new collective bargaining agreement ("CBA").  Id. at 203.  Ultimately, the disputed terms were included in the new CBA.  Id.  While neither party directly threatened litigation, Honeywell, a New Jersey corporation, filed a declaratory judgement action in the District of New Jersey seeking a determination that it could enforce the CBA without violating federal law.  Id.  The union then filed suit in the Eastern District of Michigan.  Id.  The Third Circuit upheld the district court's decision to dismiss the first-filed declaratory judgment action in New Jersey in favor of the second-filed litigation.  Id. at 206.  In making this determination, the Third Circuit cited favorably to two opinions from other circuits questioning the first-filed rule's validity when the first-filed action seeks declaratory relief and the second-filed suit seeks coercive relief.  See id. (citing Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc., 626 F.3d 973, 980 (7th Cir. 2010) (observing that "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief ... we ordinarily give priority to the coercive action, regardless of which case was filed first"); and Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551–52 (6th Cir. 2007) (noting that the "first-filed rule ... much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment [action]" and thus opining that cases "construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims

12

create ... a presumption that a first filed declaratory judgment action should be dismissed ... in favor of the substantive suit") (citation and internal quotation marks omitted)).  Similarly, because Plaintiff filed a declaratory judgment action in anticipation of Defendants filing suit for coercive relief, the Court will not apply the first-filed rule.

Additionally, the first-filed rule should not be applied because the Minnesota litigation has progressed further than the matter before this Court.  See Auto. Serv. Ass'n, 2008 WL 5244282, at *5.  On July 10, 2013, the parties appeared before the Hon. Patrick J. Schiltz for a hearing on martFIVE's motion for a preliminary injunction.  See Transcript of Civil Motion Hearing, attached as Ex 9 to Maldonado Decl., ECF No. 21-1.  It is clear from the transcript of proceedings that the Minnesota Court and parties invested significant time and resources in the litigation and resolution of the preliminary injunction, including examination of the products at issue.  Id. at 109:10-18, 110:17-25.  By contrast, in this case, this motion is the first substantive filing on the docket.  The Court has not reviewed the products at issue, or otherwise substantively reviewed the merits of the parties' claims.  Therefore, the Court finds that applying the first-filed rule is not appropriate in this case.  See Auto. Serv. Ass'n, 2008 WL 5244282, at *5 (not applying the first-filed rule when the judge in the second-filed action had already denied a motion for a preliminary injunction and to dismiss or transfer that action).

> **b.**     **Plaintiff's preference**

Ordinarily, a plaintiff's choice of forum is a "paramount consideration" and should not be "lightly disturbed."  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted).  Indeed, "a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance

13

of the public and private interests clearly favors an alternate forum." Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 190 (3d Cir. 2008). "That the Third Circuit has embraced the anticipatory filing doctrine in connection with the first-filed rule, however, suggests that it would likewise embrace the notion that little or no weight should be accorded to the forum preference of a plaintiff that files an anticipatory suit." Church & Dwight, 2010 WL 3907038, at *7; see also Joanna Foods, Inc. v. Coca-Cola Co., 2010 WL 4721521, at *3 ("Although Plaintiff correctly argues that substantial deference is typically given to Plaintiff's choice of forum, the Court affords less deference to Plaintiff's forum choice in this case for several reasons. Most significantly, the Court finds that Plaintiff did indeed engage in a race to the courthouse."). As addressed above, Plaintiff's Complaint is an anticipatory filing. Therefore, this Court will not provide a strong presumption to Plaintiff's forum choice.

Nevertheless, even if the anticipatory nature of the filing did not cut against this presumption, Defendants have still submitted sufficient evidence to overcome this presumption and demonstrate that a transfer is warranted.

   c. **Where the claims arose**

"The 'locus of the alleged culpable conduct' determines the place where the claim arose." Allied Old English, Inc. v. Uwajimaya, Inc., 2012 WL 3564172, at *4 (D.N.J. Aug. 16, 2012) (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988)). Intellectual property infringement occurs, among other places, where any allegedly infringing articles are sold. For example, patent infringement is defined in 35 U.S.C. § 271. The three acts of direct patent infringement are: (1) making; (2) using; and (3) selling the claimed invention without authority of the patent owner. 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to

sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.").

Plaintiff states it is currently engaged in a nationwide test-marketing of TRUSTY CANE and POCKETPALS. The nationwide scope of the test-marketing suggests that the infringing conduct could be occurring in multiple jurisdictions. See Compl., ECF No. 1 ¶¶ 17-18. Additionally, Plaintiff's products may not be produced in New Jersey and at least some of the allegedly infringing advertisements were created outside of the State. In comparison, all information relating to the development of Defendants' intellectual property appears to be located in Minnesota.

Because information relating to this dispute is located in multiple jurisdictions and it does not appear that the District of Minnesota would have any less access to the sources of proof necessary to reaching a final determination, the Court finds this factor is neutral to either forum.

### d. Defendants' preference

Based upon martFIVE initiating litigation in Minnesota and filing the pending motion to transfer, Defendants would obviously prefer to litigate in Minnesota. Therefore, this factor weighs in favor of a transfer.

### e. Convenience of the parties

The Court finds that the convenience of the parties based upon their relative physical and financial condition weighs in favor of a transfer, albeit slightly. On the one hand, the instant motion suggests that the parties are capable of litigating in this District if required to do so. On the other hand, other considerations support transfer. First, Plaintiff Telebrands appears to be a larger corporation than Defendant martFIVE. See Compl., ECF No. 1 ¶ 16. Additionally,

15

Plaintiff has named Hengel, a Minnesota native, as a defendant in this matter. Litigating in a foreign forum might pose a greater financial hardship to Hengel than Telebrands. Furthermore, Plaintiff has already litigated in the District of Minnesota (both in the Minnesota litigation and in My Pillow, Inc. v. Telebrands, Inc., et al., 12-cv-00389), which suggests that litigating in Minnesota is not a hardship to Plaintiff and that Plaintiff is already familiar with the District of Minnesota's local procedures.

      f.      **Convenience of witnesses**

Each party's employees appear to be located in the forum in which their employer is located. The location of non-party witnesses, however, is a more pressing concern. See In re Consolidated Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998). Plaintiff has identified three non-party entities located in the Northeast that may have discoverable information. See Declaration of Bala Iyer in Support of Plaintiff Telebands Corp.'s Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Transfer, or Stay ("Iyer" Decl."), ECF 21-2. Defendants have identified 17 third-party witnesses that may provide testimony or evidence in this matter. See Second Longval Aff., ECF No. 26-2. Obviously, the number of third-party witnesses supports a transfer. The parties' description of these entities and the materials sought also supports a transfer. Specifically, Plaintiff provides only the entities' business addresses, but does not state which specific individual(s) from each company will testify, where those individuals are located, or about what the individuals will testify. Defendants, on the other hand, have provided the names, locations,[4] and expected testimony of specific individuals. Therefore,

---

[4] While Longval does not state in his affidavit that these individuals are located in Minnesota, Defendants make this representation in their brief. See Defs. Reply Br., ECF No. 26 at 11.

the Court finds that this factor favors a transfer.

    g.   **Location of books and records**

  The location of books and records is a neutral factor as there is no indication that records could not be produced in either district. See Mercedes-Benz USA, LLC v. ATX Group, Inc., 2009 WL 2255727, at *4 (D.N.J. July 27, 2009) ("The location of the disputed records is also neutral since there is nothing to suggest that the records, which are admittedly in electronic form, cannot be easily transmitted.").

    h.   **Enforceability of judgment and administrative difficulty**

  These factors favor neither forum.

    i.   **Practical considerations, local interest, public policies, and familiarity with applicable law**

  While both districts have an interest in resolving a dispute involving a resident business, the Minnesota litigation has progressed further than the matter before this Court. Additionally, while this Court could address issues of Minnesota law, judges in the District of Minnesota certainly have more experience applying applicable Minnesota law in similar cases. While Plaintiff argues the Minnesota claim is no different than a Lanham Act claim, a Minnesota district judge very well might have more familiarity with the interaction of those two statutes. The District of Minnesota would also have more familiarity with applicable Minnesota public policies. As the District Court in Minnesota has more familiarity with these statutes and policies and has, in fact, already considered them in the context of the parties' dispute, judicial economy is better served by allowing the Minnesota litigation to proceed. Thus, on balance, this Court finds that this factor supports a transfer.

       **j.**      **Balance of conveniences**

Based upon the record, Defendants have demonstrated that the public and private factors in the aggregate support transferring this matter to the District of Minnesota.

**IV.**    **Conclusion**

For the reasons set forth above, Defendants' motion to transfer this case to the District of Minnesota is granted. An appropriate form of Order will issue.


                                        s/ Michael A. Hammer
                                        **UNITED STATES MAGISTRATE JUDGE**

Dated:       August 30, 2013